UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 15, 2009

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| | : | |
| V. | : | Grand Jury Original |
| | : | |
| KEVIN RICHARD HALLIGEN | : | VIOLATION: |
| | : | |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| Defendant. | : | 18 U.S.C. § 1957 (Monetary Transaction) |

INDICTMENT

The Grand Jury charges that:

COUNT ONE

At all times material herein:

**Introduction**

1. Red Defence International ("Red Defence"), based in London, United Kingdom, was a security consulting and crises management firm.

2. The Defendant KEVIN RICHARD HALLIGEN ("HALLIGEN") was the Chief Executive Officer of Red Defence and resided in the United States.

3. Company B was a Netherlands based international commodities trading company with offices located throughout the world.

4.      Law Firm A was a London, England based law firm specializing in commercial and shipping law.  Partner A was a solicitor and partner in Law Firm A.  Law Firm A and Partner A provided legal services to Company B.

5.      On or about September 19, 2006, two executives of Company B were arrested in the country of Ivory Coast.

6.      On or about November 14, 2006, Law firm A, entered into a contract with Red Defence for "management services, consultancy, and specialist support" relating to the circumstances surrounding the arrested executives of Company B.  The term of the contract was for a six month period beginning on October 1, 2006.

### The Scheme to Defraud

7.      From in or around November 2006 and continuing to in or around January 2007, in the District of Columbia, and elsewhere, defendant HALLIGEN did knowingly and willfully devise and intend to devise a scheme and artifice for obtaining money from Law Firm A by means of false and fraudulent pretenses, representations and promises.

### Object of the Scheme to Defraud

8.      The object of the scheme was for defendant HALLIGEN to obtain by fraud money from Law Firm A to use for his own benefit.

### Manner and Means of the Scheme to Defraud

9.      As a part of the scheme and artifice to defraud, defendant HALLIGEN represented to Partner A that he was developing a strategy in the United States that would help secure the release of the arrested executives of Company B.

10. It was part of the scheme that on numerous occasions, defendant HALLIGEN met with Partner A at a hotel in Washington D.C. to provide progress reports. During one of these meetings, defendant HALLIGEN requested $2,100,000 dollars to pay for Unites States based services.

11. It was part of the scheme that, on or about January 4, 2007, defendant HALLIGEN opened bank accounts in his own name at Bank C located at 2550 M Street N.W., Washington D.C.

12. It was part of the scheme that, on or about January 8, 2007, defendant HALLIGEN sent Partner A an electronic-mail communication in which he directed Partner A to wire $2,100,000 to a bank account maintained in defendant HALLIGEN's name at Bank C. Defendant HALLIGEN falsely represented to Partner A that these funds would be used to pay expenses incurred in the United States and defendant HALLIGEN would provide invoices and receipts for the payments he made.

13. It was further part of the scheme that, on or about January 10, 2007, defendant HALLIGEN instructed an individual at Red Defence to send an invoice to Law Firm A for $2,100,000. The invoice was for services described as "Support to Client," the description of the invoice was exclusively for "US Disbursements and Charges Nov 06 - Jan 07, " and the invoice listed "management fees" as zero.

14. It was further part of the scheme that, on or about January 10, 2007, defendant HALLIGEN caused Partner A to wire $2,100,000 from a bank account maintained in the name of Law Firm A in London to a bank account maintained in the name of defendant HALLIGEN at Bank C in Washington, D.C.

**Use of Interstate Wires to Execute the Scheme**

15. On or about January 10, 2007, in the District of Columbia and elsewhere, defendant HALLIGEN, for the purpose of executing the above-described scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, by means of a wire communication certain signs, signals, and sounds, that is a wire transfer of $2,100,000 from a bank in London, England to a bank in Washington, D.C.

*(Wire Fraud in violation of Title 18 U.S.C. § 1343)*

## COUNT TWO

16. The allegations contained in paragraph 1 through 15, above, are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

17. On or about January 11, 2007, defendant HALLIGEN caused approximately $1,696,924 of the funds received from Law Firm A to be wire transferred from his bank account at Bank C to the bank account of a real estate settlement company for the purchase of a home located in Great Falls, Virginia. Defendant HALLIGEN purchased the home for his personal benefit.

18. On or about January 11, 2007, in the District of Columbia, defendant HALLIGEN did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the wire transfer of $1,696,924 in U.S. currency, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. 1343.

*(Monetary transaction in property derived from specified unlawful activity*
*in violation of Title 18 U.S.C. § 1957)*

                                              A TRUE BILL


/s/                                           FOREPERSON

Acting Attorney for the United States
in and for the District of Columbia